WARREN v. EWING, Trustee, *et al.*

1. Estoppel: AGENT: RATIFICATION. Where A furnishes money to B, under a contract to the effect that B is to invest the same in entering public lands along the line of a contemplated railroad, and the investment is accordingly made, and the selection of lands recognized as satisfactory, and a disposition thereof provided for by the will of A, his representatives cannot afterward be heard to claim that the lands were not selected by B along the line of the railroad, as stipulated in the contract.

2. Contract: INTEREST. A and B entered into a contract to the effect that B was to invest in public lands a certain sum of money advanced by A. B was to take charge of the lands, and it was stipulated that within one year he should sell sufficient of the lands to refund to A the amount advanced by him, with interest at the rate of twelve per cent per annum. Sufficient of the lands were not sold within the year, nor for several years subsequent, to refund to A the amount advanced. *Held*, that he was entitled to the twelve per cent stipulated, not only for the one year, but for the whole length of time it had remained unpaid.

*Appeal from Louisa District Court.*

THURSDAY, APRIL 4.

ON the 18th day of August, 1853, Samuel F. Vinton and Fitz Henry Warren entered into a contract as follows:

" Memorandum of an agreement entered into this 18th day of August, 1853, between Samuel F. Vinton of the first part, and Fitz Henry Warren of the second part, witnesseth, that the said Vinton agrees to furnish, by the 15th of September next, for investment in the public lands of the United States, in the State of Iowa, at the minimum price, on or near the line of the contemplated Burlington and Missouri River Railroad, the sum of $5,000, to be expended in the purchase of lands for the said Vinton. Said Warren is to select and enter the lands at the proper land-office in Iowa; to take care of and sell the same as soon as he and said Vinton shall deem the sale of said lands or any part thereof to be expedient, and collect the money for the same as the agent of said Vinton, all which things are to be done by said Warren at his own expense, and without any charge to said Vinton. A sufficient quantity of said lands is to be sold within a year from their entry, to refund to the said Vinton, within that time, the said sum of $5,000, with interest on the same at the rate of twelve per cent per annum, the interest to be calculated from the dates when the said money shall be, in fact, advanced or invested in land-warrants or land-scrip. The taxes, if any, to be paid out of the proceeds of the lands.

" The title to all lands which shall be purchased as aforesaid, to be held in the name of the said Vinton, and for this purpose the entries of said lands shall be in the name of said Vinton, or if made in the name of said Warren or other persons, the certificates of location shall be assigned and transmitted to him immediately after their entry. Said Warren is to keep an accurate account of all sales made, and of all money collected by him, and furnish said Vinton with a statement of the same quarter-annually, if required. For his agency and services to be rendered as above mentioned, said Warren is to be the owner, as tenant in common with said Vinton, of one moiety, or equal half part of the excess of said lands which shall remain after

refunding said sum of $5,000, with said interest thereon, and is to have one-half of the proceeds of the sales of said excess, first deducting therefrom all such taxes as may be assessed on said lands, and the expenses of conveyances to the purchasers; and the said Vinton is to have the other half.

"Said Vinton is to convey such land as from time to time may be sold, when the payment of the purchase-money is fully made by the purchaser, but until the said $5,000, with interest, is refunded, the purchase-money for any tract of land sold as aforesaid is to be paid to said Vinton at the time he delivers the deed of conveyance therefor; and in like manner, after said $5,000 with interest shall be refunded, said Vinton is to receive his share, or one-half of the proceeds of the sale of any part of the remaining land, when the deed therefor shall be delivered. The said $5,000, with interest thereon, is to be repaid to said Vinton, at the city of Washington, that being the place where the same is to be advanced by him. In witness whereof," etc.

Subsequently one John W. Jones acquired an interest with said Vinton in the above contract. In pursuance of said agreement, Warren caused to be entered about four thousand acres of land in Louisa, Washington, Keokuk, Mahaska, Appanoose and Monroe counties. Sufficient of this land to reimburse the advancement made by Vinton has not been sold. In 1862 Vinton died, making provision in his will for the disposition of these lands, and appointing Charles B. Goddard his trustee for carrying out the provisions of the contract. Subsequently, upon the death of Goddard, P. B. Ewing was appointed, by competent authority, trustee, as successor of Goddard. Ewing having resigned, on the 18th of April, 1871, Madaline V. Dahlgren was appointed his successor.

The plaintiff sues as the assignee of Fitz Henry Warren, and asks that after the payment of taxes and costs of conveyancing, and the $5,000 with interest for one year, one-

half the surplus be decreed to him. The court found the plaintiff entitled to the relief prayed, and charged the lands with the payment of the taxes advanced by Vinton, with interest at six per cent, and with the $5,000, including interest for one year at twelve per cent, and for the remaining period at six per cent.

Both parties appeal.

*Halls & Baldwin* and *Charles Phelps* for the plaintiff.

*Strong & Springer* and *T. F. Withrow* for the defendants.

DAY, J. — I. It is urged that the plaintiff is not entitled to the relief prayed, because of the alleged failure of Fitz Henry Warren to locate the lands on or near the line of the Burlington and Missouri River Railroad, and to take care of the lands as stipulated in the contract.

1. ESTOPPEL: agent: satisfaction.

With regard to the locations of the lands, the testimony shows that they were made by a person having large experience in such matters, and that they were as judicious as could, under the circumstances, be made, and that Vinton afterward, upon personal examination, expressed himself fully satisfied therewith. In his will, dated March 31, 1862, long after he had seen the lands, he recognized the contract in the following terms: "I hold the legal titles to various tracts of land in the State of Iowa, purchased of the United States, under a contract with Fitz Henry Warren, dated August 18, 1853, which secures to said Warren a contingent interest in the proceeds of said lands. John W. Jones, late of Delaware, Ohio, now a resident of the city of Washington, is the owner in equity, subject to the interest of Warren, of one undivided fourth part of said lands, and I am the owner of the other undivided three-fourths parts thereof, subject also to the interest of said Warren, all of which several interests, my own included,

will appear by said contract, which is in my possession, and by certain indorsements thereon.

If any of said lands should remain unsold at the time of my death, I do hereby authorize, empower and request the said Charles B. Goddard, or any other trustee for the time being, to do all such acts and make all such sales and conveyances of said lands as may be necessary and proper to carry said contract, with said Warren, into full effect, according to the true intent and meaning thereof."

The day before his death Vinton dictated a memorandum as follows: " In respect to the Iowa lands, in which J. W. Jones has an interest, I think the best way of disposing of them will be as follows: Let some reliable man or men value the lands yet unsold; to that valuation add the amount the lands sold have produced; from that amount deduct the whole taxes and expenses; if, after so deducting, the amount over and above all taxes and expenses will more than equal the amount paid for the land, with interest, as fixed by the contract with Warren, then let Warren have one-half of such excess, to be paid in lands, which will dispose of his interest.   Then I propose that Jones and my representative make an amicable partition, according to our respective interests, viz.: One-fourth to him, and three fourths to me.   This, of course, to be subject to the agreement of all parties."   Without considering whether Warren, in the location of the lands, complied substantially with the agreement, we are of the opinion that, after such solemn and formal recognitions of his acts, with full knowledge of all that had been done, neither the personal representatives of Vinton, nor those standing in privity with him, can now say that the acts of Warren, the agent, were unauthorized.   Clearly they cannot repudiate his acts, and at the same time adopt them, so far as any benefits may be derived therefrom.   As to the taking care of the lands, the evidence shows that, being uncultivated, they needed no care, except the payment of

taxes. That Springer, on behalf of Warren, paid the taxes until 1858, and that Vinton voluntarily assumed the payment of taxes thereafter.

Under the facts shown, in our opinion, the plaintiff is entitled to a specific performance of the contract.

II. From the decree of the court respecting interest, both parties appeal. Plaintiff insists that no interest should have been allowed beyond the first year. Defendant contends that interest should have been allowed for the whole period at the rate of twelve per cent. Both parties concede that the amount of twelve per cent, reserved in the contract, is not strictly interest, but that it is a profit, stipulated for by Vinton, to compensate him for the risk incurred in advancing the money. Adapting this construction we turn to the contract itself, to determine its further meaning. It provides as follows : " A sufficient quantity of said lands is to be sold within a year from their entry, to refund to the said Vinton, within that time, the said sum of $5,000, with interest on the same at the rate of twelve per cent per annum." Here the parties clearly contemplate that this investment shall remain in the land no longer than one year, and that, at the end of that time, Vinton shall be reimbursed the amount advanced, with the stipulated profit of twelve per cent. Either party could have enforced a performance of this contract. Vinton could have compelled a sale of so much of the land as would have been necessary within the year to have paid the sum advanced, with interest, even if that should have required a sale of all the land entered. Warren, if unwilling to be longer charged with interest, could have insisted upon a like sale. But the lands were bought with a view to speculation, and, as little advance occurred within a year, a sale within that time would have divested all hope of profit. So, by tacit consent, no sale was made. Each party believed that his interests would be best subserved

*2. CONTRACT: interest.*

by awaiting a further advance in price. Vinton did not demand the money advanced. Warren did not tender it. Under these circumstances it seems to us more in accord with justice, and the analogies of the law, that the rate of profit agreed upon for the first year should be allowed during the entire period. This construction gives force to the terms of the contract, which stipulates for the refunding to Vinton of the $5,000, with interest at the rate of twelve per cent *per annum*. It does no injustice to Warren, for he could have stopped the interest at any time, as we have seen, by selling the land, and refunding the amount advanced. It is in harmony with the analogies of the law. In this State, upon a promissory note bearing a stipulated interest greater than six per cent, the interest agreed upon will be allowed after the maturity of the note. *Hand* v. *Armstrong*, 18 Iowa, 324, and cases cited.

If premises leased upon a certain reserved rent be occupied by the tenant after the expiration of the lease, the law presumes an agreement that his occupancy shall continue under the terms agreed upon in the lease. Many other examples of this construction might be given. In analogy with this rule, the failure of Vinton at the end of the year to demand payment of the $5,000 implies a proposition to Warren that the amount advanced might continue in the land under the terms agreed upon as to profit, and the failure of Warren to tender the money implies an agreement upon his part that it should so remain invested.

III. The contract provides that the taxes shall be paid out of the proceeds of the land. If any portion had been sold, to raise funds to pay the taxes due on the remainder, both parties would have been deprived of any profit growing out of the rise in value of the part sold. Hence each party is benefited by the payment of taxes by the other.

It would be inequitable if one should, by the force of circumstances, be compelled to pay all the taxes, and yet

should be denied any compensation by way of interest. In our opinion, the court properly made the taxes paid, with interest thereon at six per cent, a charge upon the land.

The cause will be remanded for decree and further proceedings, consistent with this opinion.

Reversed.